All right. Ready to proceed. You may proceed. Please support Jim Bobo. I'm here representing Don Lambert. Don was a school attendance officer in North Mississippi. He was sued because Carla Blake was arrested and has complaints about how her arrest occurred. I want to start by dealing with jurisdiction. But as I deal with that, I think it'll cover all the points that hopefully need to be covered. The district court judge was confronted with certain questions of law that she did not address. Probable cause is a question of law. Whether Mr. Lambert's conduct was objectively reasonable is a question of law. Whether the right that Ms. Blake contends was violated by Mr. Lambert is a question of law. And included in that is whether Mr. Lambert had fair warning that certain standards applied to him in the course of his job of making sure that children attend school in compliance with Mississippi's compulsory school attendance law. First, if we turn to probable cause, it's a low bar. The court has reiterated its low bar. Perfection is not required. Mistakes can be made. But if you look at what Mr. Lambert knew in June of 2014, you'll see that he had probable cause. First, the most reliable information that he had came from the school district itself. They reported the crime in effect to him. Historically, he had dealt with that information and found it to be accurate. You have before you the affidavit of the justice court judge that says the same thing. The school records are historically accurate. And you also have another school attendance officer who says the same thing. So he had that. Then he had the fact that this is dealing with a six-year-old child. Six-year-olds don't just show up at school. There are adults involved. The adults on the school side are keeping up with them. That indicates that the records in this case were even more reliable because you're dealing with a six-year-old child. Then you have to consider, if you're looking at probable cause, the knowledge and experience of the officer at the time. The officer at the time whose experience was that the school records were accurate and that when people were confronted with not having their kids at school, that they didn't always tell the truth. Well, I thought in January the 14th, your client was told that this lady did not have custody of the child. Is that correct? According to her, if you're accepting what she says is true, you move that date into 2003. But 2014 is probably the date Mr. Lambert puts that in his affidavit. And yes, your judge, on that date in late 2013 or early 14, the statement by Ms. Blake was that she had had the child. She didn't have the child now. The child's back with the mother. But— Well, if that's true, then there's absolutely no basis for proceeding, correct? No, sir. Because the affidavit that was filed is for events of May 22, 2014, not events of December 13 or— For how many absences was that? Um, ultimately it was 16 absences. No, not ultimately. The time period you're reaching back for, how many times has the child been absent?  I'm sorry? It was not the majority of the absences. It was not what, the majority of— How many days was the child absent? 16 days, Your Honor. In what period of time, though? Starting in August of 2013 through June of 2014. Yeah, but during the period of time in which she had custody of it, or he had reason to believe that she did, she said she did not have custody of the child from the virtue of a jump start, if I understood it. And it had—and I read this record. It had nothing to go back and confirm the key into this case. It's what adult is responsible for this child's absences. And that's not the numbers of absences or the fact that a 6-year-old child doesn't absent themselves. Those are not the issues. The question is, who was responsible? And the one thing that's missing in this whole performance is that they issued a warrant. The rest of the women, they had no real basis to think that she had custody of the child. Well, Judge, here's where I respectfully disagree. The school records— Well, that's fine, but tell me what the facts are. The facts are that the school records indicated that Ms. Blake was the adult responsible for seeing that the child attended school. But did—but wasn't your client told by her that she did not have custody? Yes. Okay. In 2013 or early 14. Okay. Did he—and then when he—did he make an application for a warrant? How did that—what is that process? How does that work? Well, he did it as, in effect, the process that any civilian would follow if they were filing a charge in Justice Court. He went to Justice Court, he asked the court for their form, and then he completes their form, and he left it with the court. Did he disclose to them what he knew, that she had said that she was not the custodian of the child? He did not disclose that he had talked to the—Ms. Blake in late 13 or early 14. Okay. How routinely do attendance officers encounter false denials of custody to evade responsibility? His affidavit reflects that people often, when confronted with their child not attending school, are not truthful. He doesn't break down how often somebody's denying they're responsible whatsoever. So, based on the record, I really couldn't address that. But I would say that he had been doing his job for six years, doing it the way he did it in reference to this case, and he had never had this kind of problem before. So, one of the decisions that the court will have to make that I don't believe that the district court made is whether, as a matter of law, there is a probable cause. I would ask the court, in making that determination, to look at the fact that he did have more recent information that came directly from the school. What do we do when someone that's closed with state authority seeks the arrest of a citizen and has information that would mean that they could not have committed the offense and does not disclose that to the state official that's going to issue the warrant? Well, Judge, in this case, the assumption would have to be that the previous statement was made about the events on May 22, 2014. And that's just not the case. It's temporally impossible. And so it would be reasonable for an officer investigating and charging a crime that occurred on May 22, 2014, to mentally exclude and not think he was doing something actively deliberate or reckless in not telling the court, oh, I talked to these people about an earlier crime, and they denied they committed the crime. So, I think, Judge, if you'll focus, please, on the date that he signed the affidavit, which is June 2014, and the date of the alleged crime, which is May 22, 2014, I think it answers those concerns that you have. But is it correct that your client did not make any effort to determine who was the custodian, other than that he had a school record that said they were, and you had a denial that they were? He relied on the historically reliable school records as to the identity of the responsible party. All right. Thank you. And he's not authorized to update those records? Correct. He corresponds with the school. They provide him with information. And the—I had a thought, Judge Higginbotham, and it flew right out of my head. Well, it happened to me about every other minute, so go ahead. But he's not charged with an inadequate investigation. That's what I was going to bring up. This is not a case where the complaint says the investigation was inadequate. This is a case where they're unhappy with the affidavit. And the sole basis of being unhappy with the affidavit is Malley. Malley is a police case. The whole thing's police. Every case that comes after it, including the Spencer case, all you find is police, police, police. Well, now, you say police, police, police, but you've been saying crime, crime, crime, too. Now, you can't have it both ways. Well, I think the Supreme Court says you can. Because if you look at the Stafford case, Stafford Unified School District, in those cases, they say the Fourth Amendment is involved. And if you look at the Fourth Amendment, it's crime, crime, crime, search, search, search. So you can't—in looking at whether he's had fair warning that Malley's going to apply to what he did, you have to look at those cases, and then you have to look at Malley itself and the cases after that. And so fair warning is a due process analysis. And so you have to read Malley and say, okay, if this was a criminal statute, how in the world would Mr. Don Lambert know that when the court is saying police, police, police, that that's going to apply with him? And I would submit that the correct conclusion is that he would not have fair warning. So in the Stafford case, you had school officials strip searching children. And what the Supreme Court said, well, no, no, no. Fourth Amendment's involved. You're acting as the coercive power of the state in conducting strip searches of children. We'd never tolerate that with an law enforcement officer. But the court in that case extended and said we're going to uphold qualified immunity this time. So if you look at the scope of the case law involved in Malley, you see that it's never extended to anybody other than the police. And yes, certainly this court can conclude that school attendance officers who file affidavits in justice court should provide detailed affidavits. And those affidavits may or may not include interviews they did about other crimes five months earlier. But the qualified immunity is the right to not be held accountable for mistakes. So every qualified immunity case involves mistakes. So if Mr. Lambert made a mistake, which, by the way, the justice court judge gave an affidavit to the court saying, well, if I knew the information that's called to Owen to be exculpatory, had I known that and I know the school records, I'm still going to issue the warrant. So if Malley is going to be extended for the first time, then I would urge the court to follow Stafford. How did the record go from the school to him? In other words, what is a school record there? And it says what it says. What's the trigger for that school record being handed to him for, I guess, for the purpose of going and getting a warrant? I'm not sure. How does that work? The schools, he doesn't keep up with the attendance of children. That's totally done by the school system. So the school system periodically provides him statements, in effect, that says this child is not attending school and here's the responsible party. And it's just if you had two witness statements, if instead of it was done in writing, if you had a witness statement, and Ms. Blake is saying I don't have the child. Let me be more specific. When the school periodically comes up and says this child's been absent X times and gives it to him, what is his charge? Is it to find out what's going on here or is it to go get a warrant? Early on, it's to contact the family. And in this case, he wrote a letter to Ms. Blake because that's who they had. So when you hit about five absentees, you get a letter from him. And after that, if the absentees continue, he doesn't have to retread that ground. So if you hit 16 and he's got the reliable information from the school district and he asks you to contact the school and correct the information, then those two things not only go to probable cause, but also go to the issue of whether, as a matter of law, he acted in a reasonable manner. Ms. Blake was arrested, strip searched, and then jailed. Is that right? She was arrested, taken into jail, and at some point during that strip search, yes, sir. And then she was jailed? Yes, sir. How long was she in jail? Their pleadings say briefly, Your Honor, which I've taken to mean a couple hours. But there's no detail on that. So was she released when he said, I signed a warrant for the wrong person, or had she already been released when he made his statement? She had already bonded out, Your Honor. She had already bonded out. What information did he get that led him to conclude that he had gotten a warrant for the wrong person? Well, he was out of town. He got a call from the Justice Court judge, and he'd never gotten a call like that before. The Justice Court judge asked him to look at a case. He came back in town. The school people were all gone. It's June. So he couldn't get with school people, so he decided that the safest course was to go in and say, you know, let's dismiss these charges. So he had no new information when he decided that he had gone after the wrong person? He just decided that it was the safest thing to do? Judge. Or did he decide, I now believe her when she said she doesn't have custody of the child? I'm trying to see what changed his mind. Well, I think as a practical matter, it was a call from the Justice Court judge saying look at it. And he didn't even in his affidavit, he said I wouldn't. What did he look at? Well, when the judge calls you and asks you to look at a case, I would assume he went down and looked back at what had happened. And then he had. Well, what had happened is he said he relied on the school record. I mean, you're telling me he relied on the school record that said she had custody. Yes. All right, so what changed his mind about his reliance on the school record? I would say the call from the judge. Well, the judge, you said the judge asked him to look at it. Well, Judge, it's kind of like the case where if the judge says to the jury certain things, it has more weight. The judge asks you to look into something. You may or may not have any change of heart about it, but, you know, something's going to happen. What did he look, what did he find when he looked? Well, when he looked, he found out that the school information was the same. And later on, he checked with his supervisor, and his supervisor says, yes, we go off the school record. So, and in his affidavit, he covers this because he says, now, based upon reviewing it and talking to my supervisor, I still believe I would have done the same thing. And importantly, the Justice Court judge says, had I known everything Ms. Blake says that I should have known, I still would have issued the warrant. Because her denial of a crime, I'm not guilty, versus the school record in this setting creates a probability that she committed a crime on the date charged. It doesn't create the certainty that she committed it, but the probability is there. And so Mr. Lambert was acting on the probabilities. And, yes, he did sign something saying I made a mistake. And I guess if you change custody of a child within the family, you better get down to the school and be sure that you know you changed it, because without any other thing occurring, you can be put in jail. Well, no, so that's, the judge did that, covered that, and I don't think that's right, because it's really an attack on the reliability of the school records. So it's not a, the parents and custodians are not charged with making sure that moment to moment the school records are right. However, the school records are historically accurate, and I think that's a fact that can't be ignored and can't be naysayed by saying. Well, they're historically accurate insofar as they report the absence of a child. But demonstrably here, they're not historically accurate as to who the custodian of the child is. That is in all likelihood an episodic event, and they just don't record that. In other words, they know when the child's not there. They don't know unless somebody tells them whether there's been a change of custody. Well, it's a six-year-old child, Your Honor. I'm sorry? It's a six-year-old child with a teenager. I'm not making myself, of course we know that whoever's in charge, if it's a six-year-old child, it's his responsibility to get the child to school. But what I'm saying to you is that you're talking about the historical accuracy of these records, and what is going to be historically accurate about it will be the report of the number of absences. But there is nothing out there that deals with updating the custody of the child. I suspect that seldom happens, but that's more of a friendly inquiry to your argument. But I'm trying to understand the mechanics of this because it seems like it's a problem waiting to happen. Yes, sir, Judge. And here's what I would say just in response to your question, is there's nothing in the record that shows that the information concerning the responsible party for the six-year-old child is any less accurate than the number of days that the child missed the school. So the record doesn't, the assumption that that's not accurate, as you point out, is episodic in this case. Ms. Blake says she didn't have it. We really haven't gotten to that stage of it, but at this time you have to assume that she was not guilty because in her complaint she says she didn't do it. Did your client ask the school about who had custody when he was told by the lady that she did not have custody? He didn't go back to check the school records on that. In the 13-14 early period, he instructed her to contact the school about the accuracy of the school records. In his affidavit, he says, I've had to do that before, and in my experience, when I've instructed parents or custodians to do that, they've done that. So from a legal standpoint on the side of probable cause, you'd have to say that it's unreasonable for him to assume that these parents and custodians did the same thing everybody else that he ever dealt with had done, and that's contact the school and get the school records correct for a six-year-old child. Okay. Thank you. Appellee. Counsel, let's pick up where he just left off. That is, he told your client to contact the school and be sure the school records are correct. Do you accept that? He says he did, and it's not a matter of record. We'll deny it if this case moves forward. But there was only one individual who was statutorily obligated to notify the school of the information received regarding the custody and the residence of SW, and that was Mr. Lambert. Mississippi Code 37-13-89, sub 4, places a ministerial duty on a school attendance officer to contact the home or place of residence, find the child, inform the parents and school officials where the child is physically located. Why didn't your client update the school record of where SW lived when Mr. Lambert sent? We're not accepting that he ever actually said that to her. But at the time that he made that statement, she was neither a parent, a guardian, and had no legal status with respect to that child. None. The same day he spoke to Ms. Blake and she says, I don't have this child. The court returned it. The court returned him to his mother. He called the mother who confirmed I have the child and the child has been out because the child's been sick. And he had that information and he then spoke to the stepfather who resided with the mother of the child who said this household is unstated. Statutorily, he had a ministerial duty to let the court know that months before, which he ignored. That doesn't establish the constitutional violation, but it goes to the heart of his good faith argument. When he violates ministerial duties involving the health and welfare of a child. The record has affidavits that suggest that official school records are more reliable than informal communications with parents or guardians. Is there anything – is there any evidence in the record that disputes that factual point? No, Your Honor, and I believe it would probably take a good deal of discovery to have to do that. And we're dealing with sort of the truncated qualified immunity question, which obviates that. But I can assure you, having raised three boys and put them through Mississippi schools, those school records are probably a mess. And let's look at the school record itself. The school record itself only lists Ms. Blake as a contact. It says nothing about her legal status as it pertains to that child. Because a parent is required to enroll a child and then show some proof. What does the school record show as to who the custodian of the child is, if anything? It couldn't show – it might be shown from the year before, the academic year before, when Ms. Blake had the child. And the mother, when she got the child enrolled, never updated it. Or the school never updated it. So this bad information carries forward. And it can't be reliable because it says nothing to the question he's statutorily required to establish, which is a parent or guardian. He is making an affirmative statement when he files that affidavit under oath against my client that he has probable cause to believe that she is the parent or guardian responsible for his non-attendance. And he had none of that. He had a form that said she was a contact and communications from three individuals establishing that the child no longer lived with her. There's two orders. This case goes back – there's no question she had no custody of the child because there's two youth court orders, which if he had done his job and not acted in an incompetent manner, he would have seen that the woman did not have the child legally through court orders entered by Judge Ross in the youth court. They were sitting there at the time that he's charging my client. He conducted no investigation despite the fact that he was duty-bound to. He made allegations that were false. And he withheld material exculpatory information from a judicial officer. And their argument is, to address the qualified immunity conundrum, is, well, you've never found a case that says a school attendance officer violates the constitution when he misleads a judicial officer or when he makes false statements in an affidavit or when he prepares an affidavit so utterly lacking in probable cause that no warrant should issue. And that's what we have here, Your Honor. I don't think that the Malley decision and the Franks decision have ever been read to be limited solely to police officers. This court has extended it to social workers and other individuals acting in a law enforcement-type capacity who fill out affidavits. There are obligations. Ms. Blake is a woman who never broke a law in her life, whose only crime was to be available for a six-year-old child who was moved from a home due to neglect and abuse. And who, when the court ordered her to give that child back, she did what the court ordered. And when she was notified of non-attendance, she did call him. And she says, I don't have this child. She's a Head Start teacher. A year after these charges are dropped, she's getting a letter telling her, you're going to lose your job because of this charge. That charge now is expunged. She never should have been charged. This officer should have done what a reasonable officer would have done and what he was statutorily required to do, lay eyes on SW. Wait a second. The record says he's with Ms. Blake. She's the contact. I contact the contact. She says he's not with me. He's got a duty under the Mississippi Code to let the school know where the child is. And he completely ignores his obligation and yet comes before this court requesting that you clothe him with qualified immunity when he's demonstrated nothing but incompetence, bad faith. If this case goes to trial, will it be a jury trial or a bench trial? It will be a jury trial in front of the Honorable Sharon Aycock. And I believe that Judge Aycock was correct. The district court was correct when she identified genuine issues of material fact that precluded a grant of qualified immunity or dismissal of the charge, including what was going on in this man's head when he behaved in the irrational manner in which he behaved. To answer your question, Judge Graves, what did he know on June 14th and what did he look at between the time he filed the affidavit and he dropped the charge? He looked at his notes. It's in his affidavit. And when he looked at his notes, he realized that he had handwritten notes telling him that Ms. Blake didn't have the kid, telling him that the mother had the kid, and confirming the conversation with the stepfather that the kid was with the mother in an unstable household. That's what he looked at. Because the problem is he sends this letter in September when there's five absences, and then presumably there's a follow-up call. And I'm taking for granted what they're saying is correct. So in January, before there's 16 absences, he says he's presented with this quandary and he doesn't look for the child? That's what he's hired to do. That's why he gets paid a salary. And to notify the school of that information? He wants to hold Ms. Blake responsible for not notifying the school when she has no legal status with the child when his statutory obligation as a school teacher is at stake. How would you frame the qualified immunity question that we should be answering here? That is, in the posture of this case, what question should we be asking? I think the question that you need to ask is, well, first of all, is the right clearly established? And I think both Malley and Franks and their progeny established that the constitutional right at issue here not to be subjected to arrest without probable cause based on an affidavit which is legally insufficient or an affidavit that was gotten through misdirection or misleading of the magistrate. So I think the first question is answered. And then I think you get to the second question. It used to be a three part test. Now it's a two part test. And honestly, it's all over the place. And it's a disaster. And it's going to come to a head here in the next decade, I'm sure. But for purposes of this case. Well, the court took off from Harlow and it's now into a lot of difficulty with this question. A lot of it perhaps is a distrust of the jury system. But whatever the reasons for it, that's why I want to try to frame the question. We have to deal with the difficulties of the law itself. And I think the district court gave the proper framework for this case, which is assess the constitutional right and was it clearly established. That's an easy checkmark. Then the second question of is a reasonable official in Mr. Lambert's shoes on notice that filing an insufficient affidavit against a citizen or misleading a magistrate is unconstitutional behavior. And I don't think that's a really difficult question in this case. It might be more difficult in another case. But in this case, I don't see any reasonable officer proceeding or conducting themselves. The way that Mr. Lambert did here, he was acting in some kind of malice with some type of grudge under some kind of duress or order, maybe from a supervisor. I don't know what we want to get to it, but nothing in the record now. No. Working at the order. I think malice is you can infer the malice from the act, which is misleading a magistrate. If that's not an indication of potential malice or recklessness, I don't know what could be. I think if you look at the affidavit that we provided of Josh Aldridge, it's showing his state of mind. Shortly thereafter, you can infer some form of malice. You can certainly conclude incompetence, and incompetence precludes him from a grant of qualified immunity. This court has always said and, in fact, did so recently in Josh v. Choctaw County with respect to the sheriff's request for qualified immunity. I mean, there's no reason to shield what I think any reasonable officer or judicial officer would conclude is blatantly incompetent conduct by Mr. Lambert, which resulted in an innocent woman being arrested. Strict search. Looking at the levels of conduct and shades of conduct, we start here with the ordinary negligence and that gross negligence. If you were trying a negligence case, you would have something familiar. At what point does that level of negligence arise to the level of the denial of qualified immunity? When you're dealing with the Fourth Amendment case, first of all, you've got to deal with the Fourth Amendment objective reasonableness. Well, you've got to deal with the Fourth Amendment reasonableness, and then you've got to deal with the qualified immunity objective reasonableness. And I think Judge Acock's analysis of whether or not the conduct of Mr. Lambert was objectively reasonable was spot on. In light of, for example, Mr. Aldridge's affidavit, these are Mr. Lambert's words. Well, let me interrupt you. Yes, Your Honor. In the early development of this qualified immunity, one of the difficulties the High Court ran into was the level of obstruction with the Fourth Amendment because the ongoing articulation of the metric for qualified immunity and for violating the Fourth Amendment mapped one on the other because the question of the legality of a reasonable police officer, inquiries to probable cause, what a reasonable person, and so forth. So its suggestion was that you violate the Fourth Amendment, you by definition then should not have qualified immunity. And the Court said no because of the second inquiry that has to be made. So we start from that base. Now, with that kind of in mind, how do we deal with this case? I think you deal with it by looking, first of all, at what his ministerial duties under statute were. They will go to speak to the fact that there was no objective reasonableness in his behavior and his conduct towards Ms. Blake. I think you look at the declaration of Josh Aldridge. I think you look at him when he says that he had spoken to Carla Blake before her arrest and was aware that the child had been returned to the custody of the mother and that Carla Blake was no longer responsible for the child. These were his statements, Lambert's statements made to Josh Aldridge shortly after he dropped the charge. And the only thing that changed in between then and now is that a lawyer came in and figured out maybe we can get out of this unqualified immunity. And we'll raise the fact that there's a school record that has you listed as a contact. Well, that ought to be enough because it said you were a contact. And how do we know that? Because he told Josh Aldridge. Sometime later, Mr. Lambert told me that he thought that Carla Blake did not have a leg to stand on against him because her name was still listed on the paperwork at the child's school. Signed Josh Aldridge, June of 2016, a year before the briefing in this case. So sometime between when the charge was dropped and the second conversation with Mr. Aldridge comes about, I'm sure Mr. Lambert spoke with learned counsel and was told you got nothing to worry about. Look, you had a name there. As long as you have that name, you don't have to worry about anything else you did. And Mr. Lambert, being an affable social fellow from Boonville and a talkative fellow, apparently tells this to Mr. Aldridge. They telegraphed the defense of the case probably before the case was even filed or contemporaneously therewith. Clearly, Mr. Aldridge has some—you've got to take the affidavit as true. If that's not indicative of an absence of objective reasonableness, if the material withholding of the exculpatory information—I mean, do you not tell a magistrate? Wait a second. I spoke to three people who served this woman. How would you frame the interrogatory to the jury? How do I frame it? How would you frame it? Rule 49, do you find from abundance of the evidence that the defendant—the plaintiff here has proof of abundance of the evidence that what? And honestly, Your Honor, we still have the qualified immunity issue submitted to the jury up in my neck of the woods. And I know that that's, again, all over the map. But the way it would be framed up there would be— No, I understand. Literally, you're not submitting the qualified—ultimate qualified issue to the jury. But I'm trying to enlist it through the 49 discipline as to what material facts there are that predicate to that qualified immunity. Do you find that Don Lambert withheld exculpatory material from a judge? Do you find that the affidavit submitted lacked any—was false? Do you conclude that there was no probable cause to arrest Ms. Blake? It's going to be a form of interrogatory. And in the last couple cases I've tried, the final interrogatory is, do you find that the conduct of Mr. Lambert was objectively reasonable? And there are going to be instructions that feed into those, but the general interrogatories are going to be, was there a violation of Malley? Was there a violation of Franks? I think the Malley violation can probably be handled by the court as a matter of law, but the Franks issue may have to be submitted. And then you go ahead and you make the factual determination. And there's facts here from which a reasonable jury can conclude that this officer acted in the absence of probable cause, that he acted in a manner contrary to the constitutional rights of Carla Blake. He harmed an innocent person for no good reason. I haven't heard a good reason to this date, not when you have evidence from Mr. Lambert himself that he knew better, from Josh Aldridge that he knew better. And to clarify the record, Your Honor, Mr. Lambert was advised by the judge, not based on a call from Ms. Blake. If you read Judge Moore's affidavit, she was notified by a DHS worker. Because the child was in the system, he had a guardian ad litem. There was a youth court proceeding. There were DHS workers involved. All of these people are supposed to be working in union together for the benefit of these children. So when this worker, DHS worker, who was involved in this child being placed with Ms. Blake finds out, oh my God, my foster parent's been arrested for nothing because she never had the kid and notifies the judge, I guess Mr. Lambert would. I think what Mr. Lambert did is he just completely chose to disregard and withhold from the court the fact that he had, not truthful, but he had information to show that that child was no longer in the custody of the person he was preparing to file a criminal affidavit against. He chose to ignore it. That's not objectively reasonable, and he should be made to bear his responsibility for it if a jury so determines. Your Honors, my time is up, and if there are no more questions, I'm done. Thank you. Thank you, Counsel. Rebuttal. Judge, I think you need to look at the summary judgment evidence because a lot of what counsel referred to is not in the record. This case involves a six-year-old where the only affidavits in the record reflect that the school records are historically accurate. They want to make a jury issue about objective reasonableness and probable cause, which the U.S. Supreme Court said those are not jury questions. If you look at the last paragraph in the judge's order in this case, it basically says that under her view of the law that those are jury questions. They're not, and they're questions to be answered based upon the summary judgment evidence before this court. Now, counsel seems to have strong opinions about the denial that a crime was committed in 2013 or 2014, somehow controlling the information that Mr. Lambert was required to give the judge on a crime that happened on May 22, 2014. The court certainly has the power to say that a criminal affidavit should include every crime investigation, every statement made months prior, even though they cannot relate to the events of the day of the crime in question. But to come back and say that Mr. Lambert was not— But this child was in custody pursuant to a Mississippi placement with a foster parent? Judge, that's not in the record. What I'd say— Well, that's the law. Under the law of Mississippi, that's what the foster parent—that's the source of the foster parent's authority, the state maintaining the foster care. The secret youth court system operated by the state of Mississippi can place a child under a secret order with a foster parent or any other institution that they find consistent with the process they can place them with. Now— Does anything in the school record reflect that the child is attending as a foster parent? Judge, I would hope so. I have not seen the school records. Yeah, I would too, but I'm not—my question is, did the record show anything about— Well, here's what I'd say, is the summary judgment evidence before you does not say that the school records were not accurate. Now, the— Historically, they're all very accurate, except in this instance, right? Well, historically— I think that's true factually. It seems very unusual to me that there'd be no recording of that anywhere. And my question is, in that school record, it does not show that this is a foster child? Judge, in the information provided, Mr. Lampert— Well, being a foster parent in those systems can be a relatively transient period. It can move quickly to someone else, et cetera, et cetera. And what you're telling me is that the school records are always right, and there's nothing in the school record to show that this is a foster child placement? Judge, I can only speak to the record. Yes. The record and what he was provided, it may very well be that the entire youth court record has a big, thick file on this child and that the school was involved in that and knew about it, and the school may have made a mistake when they told Mr. Lampert that Ms. Blake was the responsible party for this child. But if you stick to the summary judgment evidence, the evidence is that the school told Mr. Lampert that she was the responsible party. Yes, on the form it says contact, but he says in his affidavit, the school told me this. And so the arguments on the other side are all, you've got to weigh these 2013 statements against these June 2014 statements on behalf of Mr. Lampert. And that doesn't defeat probable cause and certainly doesn't defeat reasonableness. Thank you. Thank you. The court will take this matter under advisement.